ELLIS, Judge:
Aubrey Devillier was fired from his position as patrolman in the City of Plaquemine by Emile J. LeBlanc, the Chief of Police, on September 16, 1974. He appealed his dismissal to the Fire and Police Civil Service Board of the City of Plaquemine, which reinstated him in his position as of October 17, 1974. The City then appealed that ruling to the 18th Judicial District Court for the Parish of Iberville. In that court, the matter was tried on the record made before the Civil Service Board, and judgment was rendered finding that the decision of the Board was made in good faith and for legal cause, and affirming the decision. From that judgment, the City of Plaquemine has appealed to this Court. Mr. Devillier has neither appealed nor answered the appeal, and the rulings of the Board and the trial court are final as to him.
*1154 Aubrey Devillier was first employed as a patrolman in Plaquemine on May 15, 1970. The testimony of a representative of the State Civil Service Commission is to the effect that he was first appointed as a provisional patrolman on May 15, 1970, and passed his Civil Service Examination for that position on September 16, 1970. On November 14, 1970, the Plaquemine Civil Service Board was advised of that fact, and told that Mr. Devillier was eligible for a probational appointment.
On July 6, 1972, the Commission received a personnel action form from Plaquemine, dated July 1, 1972, making Mr. Devillier a provisional patrolman as of September 22, 1970. It was assumed that this was an error, and that he had actually been made a probationary patrolman. There were no further entries in Mr. Devillier’s file until this matter arose. Although the file was offered in evidence, it does not appear in the record before this Court.
Mr. Devillier continued in his employment as a patrolman until March 28, 1974, when he resigned. Subsequently, in May, 1974, Mr. Devillier asked the Chief of Police for a job as patrolman. The Chief asked the Mayor of the City of Plaquemine if it was all right to hire him back, and the Mayor said yes. Mr. Devillier went back to work on May 20, 1974. No notice of his resignation on March 28, 1974, or of his re-employment on May 20, 1974, was furnished to the Plaquemine Civil Service Board.
Kathy Lynn Bezet, the Secretary of the Civil Service Board, testified that the records of the Board showed that, as of September 16, 1974, Mr. Devillier was a provisional employee. These records were not offered in evidence, and form no part of the record before us. The testimony in the case is that neither the Mayor and Board of Aldermen nor the Civil Service Board took any action whatsoever relative to Mr. Devil-lier’s resignation, re-employment, or dismissal. Apparently, Mr. Devillier did, at the point, appear before the Mayor and Board of Aldermen in an attempt to have his prior four years of service recognized in fixing his rate of pay, but was unsuccessful in doing so. The only other testimony bearing on Mr. Devillier’s status after May 20, 1974, is that of the Chief of Police who stated that he had no temporary employees.
Both before March 28, 1974, and after May 20, 1974, Mr. Devillier had, on various occasions, been ordered to serve as shift supervisor, and had done so. He testified that he had complained about doing this because his job description did not include supervisory duties. Because of a shortage of supervisory personnel, the duty of shift supervisor was given to the patrolmen when necessary.
On September 16, 1974, when ordered by the Chief of Police to act as shift supervisor, Mr. Devillier refused, for the reason that it was not part of his job as patrolman. The Chief fired him on the spot.
On September 19, 1974, the Chief advised the Civil Service Board by letter of his action and the reason for it. The record is devoid of any evidence that Mr. Devillier was furnished with a copy of the letter, or that he received any written notice of his discharge and the reason for it.
The major contention of the City of Plaquemine is that, at the time of his discharge, Mr. Devillier was a temporary or provisional employee, and therefore not entitled to an appeal to the Board of his dismissal.
Under the scheme set forth in R.S. 33:2531 et seq., the applicable Civil Service Law, an employee can fall into three different classifications: temporary or provisional; probational; and regular or permanent.
A temporary appointment may be made by an appointing authority when the Board is unable to certify anyone as eligible for appointment. Any person deemed qualified by the appointing authority may be appointed, for a period not to exceed three months. Such an appointment may be reviewed with the authorization of the Board for additional periods not to exceed a total of three additional months. R.S. 33:2556. These employees have no right of appeal to *1155 the Board if dismissed, and may be dismissed without cause. R.S. 33:2561.
Those who had been appointed to a position, after passing the requisite test, are required to complete a working test period of not less than six months or more than a one year. During the period of the working test, an employee is considered to be a probational employee. After serving three months, but less than six months of the working test period, an employee can be removed only with the prior approval of the Board, and may appear before the Board and present his case before he is removed. R.S. 33:2555.
Regular or permanent employees are those who have been appointed to a position and who have successfully completed the working test period. R.S. 33:2533(18). These employees have a right to appeal to the Board from any disciplinary action by the appointing authority. R.S. 33:2561.
R.S. 33:2550(D) provides, in part:
“Any regular employee who resigns from a position in the classified service may, with the prior approval of the board, be re-employed in a position of the class or in a position of any lower class for which he is qualified, provided the re-employment is made within four years of the date of his resignation, and provided no person whose name appears upon either the reinstatement, employment or re-employment list for a class to which any such person is re-employed is willing to accept an appointment therein.”
It is apparent that neither the appointing authority nor the Board have been adhering to the provisions of the law relative to employment of those in the classified service. The Chief of Police testified to the manner in which Mr. Devillier was hired, and this was confirmed by the Mayor. We think it clear that no temporary or provisional appointment was envisioned by them. In any event, the appointing authority did not follow the law relative to temporary appointments any more than it did for a probational or regular appointment. We think that the City can not take advantage^ of its own administrative shortcomings to deny to the employee the rights given him by the law. The Board itself found Mr. Devillier to have been a probational patrolman as of the date of his discharge, and we think, under the above circumstances, there is no error in their conclusion.
As a probational patrolman, with between three and six months service, Mr. Devillier could only be removed under the provisions of R.S. 33:2555, which provides, in part:
“The period of the working test shall commence immediately upon appointment and shall continue for a period of not less than six months nor more than one year. Any employee who has served at least three but less than six months of his working test for any given position may be removed therefrom only with the prior approval of the board, and only upon the grounds that (1) he is unable or unwilling to perform satisfactorily the duties of the position to which he has been appointed or (2) his habits and dependability do not merit his continuance therein. Any such employee may appear before the board and present his case before he is removed.”
It is clear from the above that Mr. Devil-lier could be dismissed only with the prior approval of the Board, and after a hearing if the employee desires one. The Board could have and should have refused to approve the dismissal on that ground alone. However, they considered the case on its merits and concluded that, although Mr. Devillier should have obeyed the order of his superior officer, the punishment of dismissal was too severe. They reasoned that a man should not be ordered to do a sergeant’s job without receiving a sergeant’s pay, and that, otherwise, he should not be ordered to perform duties not prescribed by his job description. They stated that Mr. Devillier should have obeyed the order and then lodged a formal complaint with the Board. Under R.S. 33:2561, the Board has the authority to modify the order of removal “by directing a suspension without pay for a given period.” It chose to exercise this authority by directing the reinstate *1156 ment of Mr. Devillier as of a date one month after his discharge.
The City of Plaquemine asks that we reinstate the dismissal of Mr. Devillier. We cannot do so since, as noted above, the entire procedure of his removal was not in accordance with law. In any event, the scope of our review, as well as that of the district court, is to determine if the Board’s decision was made “in good faith and for cause.” R.S. 33:2561. The district judge held that it was, and, in the context of this appeal, we agree.
The final point urged is that the district court did not have jurisdiction of the appeal. Without going into a detailed discussion of the question, we will say that we think the point to have been settled adversely to the City’s contention in the case of Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971).
The judgment appealed from is therefore affirmed, with the City of Plaquemine to pay such costs as it may be liable for under the law.
AFFIRMED.